OPINION. Kern, Judge: As to the first and second issues petitioner contends that during each of the calendar years 1940 and 1941 he was “regularly engaged in the trade or business of buying and selling real estate, and generally dealing in real estate and in the operation of income-producing property.” It is argued therefrom (1) that 2930 West Grand Boulevard, the Pallister & Churchill Streets property, and the 80-acre tract of land[1] were held by petitioner “primarily for sale to customers in the ordinary course of his trade or business” and thus were not capital assets as defined in section 117 (a) (1) of the Internal Revenue Code, or, in the alternative, that the buildings on the first two of those holdings were not capital assets under section 117 (a) (1), since they were “property, used in the trade or business, of a character which is subject to the allowance for depreciation,” and (2) that no part of the deductible losses with respect to the West Grand Boulevard property or the Pallister property is excluded by section 122 (d) (5) [2] from petitioner’s 1940 net operating loss, since that section only exceptó and limits allowable deductions which are “not attributable to the operations of a trade or business regularly carried on by the taxpayer.” We are of the opinion that during each of the calendar years 1940 and 1941 petitioner was engaged in the trade or business of selling real estate, and that 2930 West Grand Boulevard, the Pallister & Churchill Streets property and the 80-acre tract of land were held by petitioner “primarily for sale to customers in the ordinary course of his trade or business.” These three properties, therefore, were not capital assets as defined in section 117 (a) (1).[3] Richards v. Commissioner, 81 Fed. (2d) 369, affirming 30 B. T. A. 1131; Welch v. Solomon, 99 Fed. (2d) 41; Snell v. Commissioner, 97 Fed. (2d) 891; Ehrman v. Commissioner, 120 Fed. (2d) 607; Oliver v. Commissioner, 138 Fed. (2d) 910; Gruver v. Commissioner, 142 Fed. (2d) 363, affirming 1 T. C. 1204; A. R. Calvelli, 43 B. T. A. 6; Neils Schultz, 44 B. T. A. 146; Charles H. Black, Sr., 45 B. T. A. 204. The record indicates that petitioner acquired each of the properties here in question with the intention of selling it at a profit. It does not appear that he purchased any of the properties with the purpose of realizing income from the rental thereof. Petitioner acquired the 80-acre tract of land not as a farm or an investment, but because he thought the interurban line would be established and that he would be able to realize profit on the sale of lots carved out of the farm acreage. Petitioner actually sold the Pallister & Churchill Streets property in 1920, and reacquired it in 1932 only after the vendee defaulted. The West Grand Boulevard property was purchased because he thought he would be able to resell it at a profit by reason of a demand for land in the vicinity of the Fisher Building which he expected to develop. None of these transactions was “an isolated holding dissimilar from any other transaction and unrelated to the history of petitioner’s activities * * See Julius Goodman, 40 B. T. A. 22. Petitioner carried on real estate operations for gain for many years prior to 1931. His operations were extensive, frequent, regular, and diversified from the standpoint of the number and type of properties involved. He realized substantial profits from his real estate operations prior to 1931. It is true that after 1931 petitioner’s purchases and sales of property virtually ceased, but we are not convinced that he abandoned his business of selling real estate. Petitioner’s activity was not restricted or halted by reason of any change in his plans or purpose, but rather by the force of economic circumstances beyond his control and not of his making. The general business depression of the past decade was the reason for the curtailment of petitioner’s activity. We can not ignore the realities of the situation. It was the depression which prevented petitioner from selling at a profit real estate which he had purchased for sale. The market for real estate in large industrial areas, such as Detroit, became virtually nonexistent during that period, and petitioner was compelled to become inactive as a seller of real estate until conditions improved so that he could work his way out of his difficulties and again sell at a profit the real estate which he had purchased. But before he was able to dispose of the properties here in question at a profit, petitioner was forced to sell or relinquish them at the substantial losses, which are now at issue. Although certainly not determinative of the problem here before us, we think that the resurgence of petitioner’s activities with respect to the South Boulevard property shortly prior to the hearing of this case is a fact indicating that petitioner did not abandon his business of selling real estate, as is also the fact that petitioner has continued to keep his real estate broker’s license alive. The fact that petitioner was also engaged in other business activities did not preclude him from engaging in the real estate business at the same time, for an individual can be engaged in more than one trade or business. Snyder v. Commissioner, 295 U. S. 134, 139; Oliver v. Commissioner, supra; Snell v. Commissioner, supra; Ignaz Schwinn, 9 B. T. A. 1304, 1308. Having sustained petitioner’s first contention that the three properties here involved were not “capital assets” within the meaning of section 117 (a) (1), we need not consider petitioner’s alternative contention with respect to the buildings on the West Grand Boulevard and Ballister & Churchill Streets properties. With respect to the loss sustained in 1941 on the disposal of the 80 acres of land, petitioner’s contention that the loss is deductible in 1941 as an ordinary loss is sustained. Petitioner’s losses in 1940 were attributable to the operation of a trade or business regularly carried on by the petitioner and, therefore, the taxpayer must be also sustained in his contention that no part of the deductible losses with respect to the West Grand Boulevard or the Pallister & Churchill Streets properties is excluded by section 122 (d) (5), supra, in the computation of his net operating loss carryover from 1940. We are aware of the difference in phraseology between section 23 (e) and section 122 (d) (5), in that the latter, in addition to the requirement that the loss be incurred in a trade or business, requires that it be attributable to a trade or business regularly carried on by the taxpayer. While we incline to the view that the business of selling real estate was one regularly carried on by petitioner in 1940, it is not necessary to our conclusion on this point for us to hold, or find, that the losses in question were attributable to the operation of a business regularly carried on by the taxpayer in that year. It is sufficient for our conclusion that we find, as we have done, that the losses in question were attributable to the operation of a business regularly carried on by petitioner. Edgar L. Marston, 18 B. T. A. 558; affirmed sub nom. Burnet v. Marston, 57 Fed. (2d) 611. Cf. Lewis G. Carpenter, 33 B. T. A. 1. There can be no question but that the business of buying and selling real estate was regularly carried on by petitioner prior to 1931. The properties here in question were purchased or acquired by petitioner for resale at a profit before that date. Even though we should assume, arguendo, that the business of selling real estate, although engaged in by petitioner in 1940, was not one regularly carried on by him in that year, nevertheless, we would conclude that the losses in question were attributable to a business of buying and selling real estate which was regularly carried on by him in years prior to 1940; and this conclusion would render inoperative the limitation of section 122 (d) (5). The third issue is whether petitioner may deduct all of the allowable loss sustained on the disposition of the 80 acres of land in 1941, or whether, as respondent determined, he may deduct only one-half thereof, since the property was acquired and held by him and his wife as tenants by the entireties. Petitioner recites the axioms that substance prevails over form and that income is taxable to him who earns it, and he contends that, since he paid for the property from his own funds and at all times exercised dominion over it, and since title was taken jointly only for convenience, he was the real owner, sustained the whole loss, and is entitled to the entire deduction therefor. Petitioner does not contend that the circumstances surrounding the acquisition and retention of this land render inoperative the rule of Michigan law that conveyance to a husband and wife creates a tenancy by the entireties. Petitioner understood at that time that such an estate was created by the conveyance of the land and it seems clear that his understanding was correct. Commissioner v. Hart, 76 Fed. (2d) 864; Paul G. Greene, 7 T. C. 142. With respect to their income tax effect, circumstances of acquisition similar to those here were recently considered by us in Paul G. Greene, supra, and they were held not to vary the well settled rule that income from an estate by the entireties under the laws of Michigan is taxable one-half to each of the tenants. See also Commissioner v. Hart, supra; H. D. Webster, 4 T. C. 1169, 1174; Herman Gessner, 32 B. T. A. 1258. We think it follows as a necessary corollary (hereto that petitioner, as tenant by the entirety of the land, may deduct only one-half of the allowable loss sustained on its sale. Anna S. Whitcomb, 37 B. T. A. 806, 812; affd., 103 Fed. (2d) 1009; Edwin F. Sandberg, 8 T. C. 423. We so hold. Reviewed by the Court. Decision will be entered wider Rule 50. Petitioner does not contest respondent’s determination that sale of the Osmnn Street property yielded net gain rather than net loss, as reported by petitioner, and there is no dispute here as to the actual amount of loss sustained on the other dispositions in 1940 and 1941, or as to its apportionment between land and buildings. SEC. 122. NET OPERATING LOSS DEDUCTION. (a) Definition of Net Opeeatino Loss. — As used in this section the term “net operating loss” means the excess of the deductions allowed by this chapter over the gross income, with the exceptions and limitations provided in subsection (d). [[Image here]] (d) Exceptions and Limitations. — The exceptions and limitations referred to in subsections (a), (b) and (e) shall be as follows: ♦ •***♦* (5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross Income not derived from such trade or business. * * • SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definition. — As used In this title— (1) Capital assets. — The term "capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not Include • * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used In the trade or business, of a character which is subject to the allowance for depreciation provided In section 23 (1).